NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Esmat Zaklama,** | |
| Plaintiff, | Civil Action No.06-cv-1951 (PGS) |
| v. | |
| **City of Bayonne, et al.** | **OPINION** |
| Defendants. | |

**SHERIDAN, U.S.D.J.**

Defendants herein move, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss plaintiff's Complaint for failure to state a claim upon which relief may be granted. Plaintiff, Esmat Zaklama, *pro se*, has chosen to voluntarily dismiss his claims as they pertain to properties owned by a corporation and a trust, for which plaintiff acknowledges he cannot represent (see letter order of Magistrate Judge Hedges dated November 13, 2006)[1].

I.

Plaintiff filed suit against the City of Bayonne, the Housing Authority of the City of Bayonne (improperly pled as "Bayonne Housing Authority"), the Bayonne Board of Construction Appeals, and numerous individuals, including municipal judges and township officials, in both their personal and official capacities. The individual defendants employed by the City of Bayonne or serving as city officials without compensation include Bayonne Municipal Court Judge Cheryl Scott Cashman,

---

[1] The Court granted permission for oral argument. It was scheduled for April 19, 2007. Plaintiff did not appear, but appeared the next day. The court allowed plaintiff to set forth his reason for failing to appear; but denied the opportunity to substantively argue the motion, as there were other matters pending and defendants' counsel was not present.

Bayonne Municipal Court Judge Frank Carpenter, Bayonne Mayor Joseph Doria, Jr., Bayonne Construction Official Michael Feuer (improperly pled as "Michael Fuer"), Bayonne Health Inspector Eugene Gallagher (improperly pled as "Geugene Galigar"), Bayonne Health Inspector Simon Stergion, Bayonne Law Director Jay Coffey (improperly pled as "Jay Coffee"), Plumbing Sub-Code Inspector John Jessen, Bayonne Construction Board of Appeals Chairman Richard Martin, Bayonne Construction Board of Appeals Vice Chairman Patrick Kenney, and Bayonne Construction Board of Appeals Member Michael Crimaldi. William Finberg, Martin Caspar, and Thomas Coughlin were named as defendants, however, these individual are not employed by the City of Bayonne and, to date, have not been served.[2]

The plaintiff has alleged a violation of his civil rights pursuant to Section 1983, trespassing, denial of due process, malicious prosecution, intentional infliction of emotional distress, negligent infliction of emotional distress, interference with civil rights, and malice. These claims for relief stem from plaintiff's allegation regarding the constitutionality of a particular Bayonne Municipal Code, which according to the plaintiff "allows the City to levy upon the land the cost of abatement as part of the taxes." In or around December 2005, plaintiff received a letter from the Bayonne Law Department advising him that liens in the amount of $70,925.65 and $405,023.85 were being placed on property identified as 973 Broadway, Bayonne, New Jersey and 44 West 54th Street, Bayonne, New Jersey, respectively. Plaintiff concedes that 973 Broadway is owned by a trust and 44 West 54th Street by a corporation. These liens arise as a result of certain housing code violations which plaintiff refused to correct. The Complaint further alleges that notice and appeal rights were not

---

[2] On September 29, 2006, this Court granted the Defendant Bayonne Housing Authority's motion to dismiss.

properly provided and municipal judges abused their judicial authority in imposing excessive fines upon plaintiff.

II.

On a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. See *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See *In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Wright & Miller, *Fed. Practice & Procedure*: Civil 2d § 1357 at 340).

III.

As a result of plaintiff's voluntary dismissal of all claims asserted on behalf of the trust or corporation as property owners, the Complaint no longer identifies the claims that plaintiff wishes

to pursue.  Thus, the Court is left to delineate the causes of action that remain.[3]  In count two of plaintiff's Complaint, plaintiff asserts a cause of action for "illegal search and seizure/trespassing." This is not a cognizable claim based upon plaintiff's concession that he is not the owner of the property in question. From a fair reading of the Complaint, it appears this claim encompassed all claims asserted against the Bayonne Board of Construction Appeals, as well as certain individual defendants, including the Bayonne Construction Official Michael Feuer, Bayonne Health Inspector Eugene Gallagher, Bayonne Health Inspector Simon Stergion, the Plumbing Sub-Code Inspector John Jessen, the Bayonne Construction Board of Appeals Chairman Richard Martin, the Bayonne Construction Board of Appeals Vice Chairman Patrick Kenney, and Bayonne Construction Board of Appeals Member Michael Crimaldi.  Likewise, the sole mention of the Bayonne Law Director, Jay Coffey concerns a letter sent in December 2005 advising that liens were placed on the properties located at 973 Broadway and 44 West 54th Street in the amounts of $70,925.65 and $405,023.85, respectively.  (Thus all claims against the law director appear to concern the property and the illegal search and seizure.)

      The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. Amend. IV. It is well-settled that the Fourth Amendment protects both property and privacy interests. *Soldal v. Cook County Illinois*, 506 U.S. 56 (1992).  It is also clear that "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Brown v. United States*, 411 U.S. 223 (1973).  In determining whether standing exists, the law does not require that a litigant prove that his rights were actually violated to achieve standing. *Rakas v.*

---

[3] Defendants for some reason do not argue that the case should be dismissed pursuant to Fed. R. Civ. P. 8.

*Illinois*, 439 U.S. 128 (1978). Rather, the litigant must merely allege an injury in fact. *Id.* Thus, to determine whether plaintiff has standing to bring his Fourth Amendment claims, the Court must assess: (1) whether he asserted his own privacy or property rights under the Fourth Amendment; and (2) whether he alleged an injury in fact.

In reviewing the first part of the test, the court must assess whether plaintiff has asserted a recognizable privacy right. In determining whether a person has a "legitimate" or "reasonable" expectation of privacy in the place searched is a "fact-bound question," dependent upon the strength of interest in the property and the nature of control that the person exerts over it. *United States v. Baker*, 221 F.3d 438, 442 (3d Cir.2000). Here, taking as true the assertions of plaintiff that he was not the owner or a resident of the property in question, as such, the Court finds that plaintiff has neither a "legitimate" nor "reasonable" expectation of privacy.

In lieu of invasion of privacy, the plaintiff may allege some other violation of his property rights under the Fourth Amendment or improper seizure of property. A "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109 (1984).

Again, plaintiff fails to meet his burden since maintains no property rights in the property in question, there can be no injury in fact to plaintiff regarding the entrance of the property by these defendants.[4]

IV.

Plaintiff's opposition brief suggests that his sole remaining claim is against the defendant municipal judges. At paragraph three of plaintiff's opposition brief, plaintiff states: "[P]laintiff

---

[4] Should these individual defendants be the subject of claims that survive plaintiff's partial voluntary dismissal, it would seem to the Court that these individual are entitled to qualified immunity, as discussed in Part VI of this Opinion.

alleges in his complaint that he was deprived of his civil rights being incarcerated and of his equal protection of the laws by been [sic] forced to pay unreasonable fins [sic] ($2,500.00 twice) by Judge Carpenter." In the following paragraph, plaintiff continues: "Judge Carpenter's order was proven wrong, arbitrary and capricious and nothing but abuse of judicial power, malicious prosecutions, evidenced by reversed [sic] of the Municipal court order of Honorable Fracenic [sic] B Shultz, J.C.S. [sic] please take judicial notice of said order as Exhibit A attached her [sic] by reference." The second point of plaintiff's opposition brief continues to argue that "Plaintiff...was subject to false warrant of arrest false impression [sic] for (3) three days from a direct order oppose [sic] municipal Court Judge Frank Carpenter and Sheryl [sic] Scolott [sic] Cashman, whose judgments where [sic] found wrong and where [sic] reversed..."[5]

It is well established that judges are generally "immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9 (1991). The doctrine of judicial immunity is based upon a theory that a judge, in performance of his or her duties, should be free to act as is necessary under color of title without threat of suit for damages. See *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1872). This immunity applies to § 1983 actions as well. *Pierson v. Ray*, 386 U.S. 547, 554 (1967).

The Supreme Court has made clear that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts ..." *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978) (quoting *Bradley*, 80 U.S. (13 Wall.) at 351). The Third Circuit took the additional step of

---

[5] At oral argument, counsel for defendants explained that a bench warrant was issued by one of the defendant municipal judges following several failures on the part of the plaintiff to appear before the municipal court. When plaintiff was thereafter stopped for a traffic violation, plaintiff was arrested pursuant to the bench warrant and held for a few hours before being release. Plaintiff failed to appear at oral argument to refute or respond to defendants' counsel's statements.

determining that judges of limited jurisdiction, such as New Jersey municipal court judges, are entitled to judicial immunity as well. *Figueroa v. Blackburn*, 208 F.3d 435, 441 (3d Cir. 2000).

The Supreme Court has defined judicial immunity as absolute and only able to be overcome in two sets of circumstances. First, a judge is not immune from liability for non-judicial acts. Second, a judge is not immune for judicial actions that are taken without jurisdiction. *Mireles*, 502 U.S. at 11-12.

Here, plaintiff has failed to demonstrate that Defendant Judges Cashman's and Carpenter's actions were either non-judicial or outside their scope of jurisdiction. As such, plaintiff's claims against the defendant judges must be dismissed as they are absolutely immune.

V.

To the extent that any claim remains as against the Defendant City of Bayonne, the City may be liable for the alleged misconduct of its employees if plaintiff can show that the town established a policy, practice or custom followed by said employee. *Monell v. Dept. of Social Servs. of New York*, 436 U.S. 658, 691 (1978); *MB v. City of Philadelphia*, 2003 WL 733879 (E.D.Pa.2003) (utilizing same standard to state law claims). Defendants will not be held liable under a *respondeat superior* theory of liability. *Monell*, 436 U.S. at 663. "When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged [action] implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F .3d 966, 971 (3d Cir. 1996); see also *Monell*, 436 U.S. at 691.

> A government policy or custom can be established in two ways. Policy is made when a decision maker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict. A course of conduct is considered to be a custom when, though not authorized by law, such practices of

> state officials are so permanent and well-settled as to virtually constitute law.

*Beck*, 89 F.3d at 971; see also *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). A custom may also be established by evidence of knowledge of the misconduct and acquiescence in the continuing action. *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989).

Here, none of plaintiff's allegations reflect Defendant City of Bayonne policies, practices or customs. Plaintiff offers no evidence whatsoever which links any city employees' actions with any instruction, overt or covert, from the City of Bayonne. To impose liability in such circumstances would place Defendant City of Bayonne in a *respondeat superior* position of liability for every action of every town employee. This is clearly disallowed under the Supreme Court's holding in *Monell*.

As such, all claims against Defendant City of Bayonne should therefore be dismissed.

VI.

Again, while it does not appear that the Complaint, following plaintiff's partial voluntary dismissal, states any cause of action against the Bayonne Mayor Joseph Doria, Jr., to the extent a claim exists, qualified immunity would bar any such cause of action. "The doctrine of qualified immunity 'hold[s] that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Doe v. County of Centre, P.A.*, 242 F.3d 437, 453-54 (3d Cir.2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining whether a defendant is immune from suit, the Court must determine: i) whether the plaintiff alleged a violation of his statutory or constitutional rights; ii) whether the right alleged to have been violated was clearly established in the existing law at the time of the violation; and iii) whether a reasonable official should have known that the alleged action violated

the plaintiff's rights. See *id.* at 454 (quoting *Rouse v. Plantier*, 182 F.3d 192, 196-97 (3d Cir. 1999)); see also *Michaels v. New Jersey*, 222 F.3d 118, 121 (3d Cir. 2000) (citations omitted). The determination of whether a defendant is entitled to a defense of qualified immunity is a question of law for the Court to decide. See *Michaels*, 222 F.3d at 121 (citation omitted).

In his Complaint, plaintiff asserts that Bayonne Mayor Joseph Doria, Jr. was notified by plaintiff of the situation. Specifically, plaintiff maintains that he attempted to contact the mayor by copying him on letters sent to various city officials. However, according to plaintiff's Complaint, Mayor Doria did not respond to plaintiff's letter and made no effort to correct the situation.

However, there is no evidence that shows that any actions of Mayor Doria affected plaintiff's statutory or constitutional rights. There is no evidence that Defendant Doria had any involvement in policies governing the Bayonne Building Department. Further, Defendant Doria was neither aware of the complaints filed with said department nor did he maintain control over the actions of the Municipal Court. As plaintiff fails to satisfy the third prong of the test set forth by the Third Circuit, Defendant Doria is immune from liability. Therefore, all claims against Defendant Doria are dismissed.

VII.

Plaintiff has also alleged common law claims against the defendants for intentional infliction of emotional distress, negligent infliction of emotional distress, and malice. As an initial note, plaintiff's claims are barred by plaintiff's failure to file a torts claim notice within 90 days of the alleged violation. See N.J.S.A. 59:3-2. However, beyond the procedural deficiencies, these claims lack substantive merit.

To establish a claim for negligent infliction of emotional distress, a plaintiff must show: "(1) [t]he death or serious physical injury of another caused by defendant's negligence; (2) a marital or

intimate family relationship between plaintiff and the injured person; (3) observation of the death or injury at the scene of the accident; and (4) resulting severe emotional distress." *Fleming v. United Parcel Service, Inc.*, 255 N.J. Super. 108, 166, 604 A.2d 657 (Law. Div. 1992). The plaintiff clearly has not alleged facts to support this cause of action because there is no reference to the infliction of any physical injury to another.

"Intentional infliction of emotional distress consists of 'extreme and outrageous conduct [which] intentionally or recklessly causes severe emotional distress to another.'" *Lingar v. Live-In Companions, Inc.*, 300 N.J.Super. 22, 34, 692 A.2d 61 (App.Div.1997) (citing *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 366, 544 A.2d 857 (1988)) (quoting *Restatement (Second) of Torts § 46* (1965)).  A plaintiff must allege the following elements to state a claim for intentional infliction of emotional distress: (1) conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community," (2) a deliberate act, committed with the intent to cause emotional distress or with deliberate disregard of a high probability that emotional distress would occur, (3) proximately causing emotional distress that is "so severe that no reasonable man could be expected to endure it." *Buckley*, 111 N.J. 355, 366, 544 A.2d 857 (1988) (quoting *Restatement (Second) of Torts § 46*, comments d and j (1965)); see also *Green v. City of Paterson*, 971 F.Supp. 891, 911 (D.N.J.1997). It is the responsibility of the court to determine as a matter of law whether the required level of distress could reasonably be found. See *Buckley*, 111 N.J. at 367, 544 A.2d 857; *Fleming*, 255 N.J. Super. at 167.

However, N.J.S.A. 56:9-2(d) provides:

> No damages shall be awarded against a public entity for pain and suffering resulting from an injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not

      apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00." N.J.S.A. 59:9-2(d).

"[I]n order to vault the pain and suffering threshold under the Tort Claims Act, a plaintiff must satisfy a two-pronged standard by proving (1) an objective permanent injury, and (2) a permanent loss of a bodily function that is substantial." *Gilhooley v. County of Union*, 164 N.J. 533, 540-41, 753 A.2d 1137 (2000); see *Brooks v. Odom*, 150 N.J. 395, 696 A.2d 619 (1997).  Here, plaintiff has not alleged any permanent loss of a bodily function, permanent disfigurement, dismemberment, or any type of physical injury.  Plaintiff's opposition to defendants' motion does not address the state law claims and plaintiff has presented no admissible evidence relating to the existence of any injuries, much less permanency.  Therefore, these claims are dismissed.[6]

### VIII.

      In summary, plaintiff's Complaint is dismissed, in its entirety, with prejudice.

 

                                                           *s/Peter G. Sheridan*  
April 25, 2007                                        PETER G. SHERIDAN, U.S.D.J.

---

[6] Because the plaintiff has not articulated the theories and/or facts underlying his cause of action for "malice," and the Court cannot discern under what theories plaintiff brings the claim, this claim is dismissed.  *Urrutia v. Quill*, 2005 WL 2648339 (M.D. Pa. 2005).